Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Monina Wood

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Monina Wood<br><br>                    Plaintiff,<br><br>    v.<br><br>TransUnion, LLC; Experian Information Solutions, Inc.; Bank of America, N.A.<br>                    Defendants. | CASE NO. 8:23-cv-00357<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff Monina Wood (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's account with Defendant Bank of America, N.A. (hereinafter "BofA").

3. Here, BofA continues to report Plaintiff's accounts as charged-off rather than included and discharged in bankruptcy after Plaintiff disputed the inaccurate trade line.

4. After disputing the incomplete and inaccurate information, BofA, Experian, and TransUnion continued to report the inaccurate account information rather than to show the account was included/discharged in bankruptcy.

5. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

6. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates.

7. Third parties have been exposed to the inaccurate BofA tradeline.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. The venue is proper pursuant to 28 U.S.C. §1391(b)(1) because Defendants regularly transact business within this District and are otherwise subject to personal jurisdiction within this District.

12. Defendant Experian Information Solutions, Inc. is a credit reporting agency that does business throughout the Untied States and maintains its headquarters in the Central District of California.

13. Bank of America, N.A. is a bank that does business throughout the United States, including the Central District of California.

## GENERAL ALLEGATIONS

14. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

15. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

16. Plaintiff alleges that Defendant BofA received notice of Plaintiff's chapter 7 bankruptcy filing and subsequent notice of her discharge.

### FICO, Inc.

17. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

20. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

21. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

22. There are 28 FICO Scores that are commonly used by lenders.

23. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

24. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

25. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

26. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

27. Each of the five factors is weighted differently by FICO.

28. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

29. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

30. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

31. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

32. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

33. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

### Metro 2

34. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

35. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

36. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

37. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

38. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.

    c. The CDIA offers a FCRA Certificate program for DFs.

    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

39. The CDIA's Metro 2 is accepted by all CRAs.

40. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

41. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

42. The three main credit bureaus helped draft the CRRG.

43. The CRRG is not readily available to the public. It can be purchased online for $229.45.

44. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

45. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

46. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

47. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

48. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

49. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

50. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

51. When a consumer files bankruptcy certain credit reporting industry standards exist.

52. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

53. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

54. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

55. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

56. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

57. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

58. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

59. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

60. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

61. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

62. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

63. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.

64. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

65. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.

66. The ten-year rule for reporting runs from the date the bankruptcy was *filed*.
67. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.
68. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.
69. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

**Plaintiff's Dispute**

70. Plaintiff filed for Chapter 7 bankruptcy protection on April 18, 2022 and received her discharge on July 25, 2022.
71. On September 27, 2022 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to confirm BofA was reporting complete information regarding her account.
72. On the September 2022 credit report Plaintiff noticed that BofA was reporting Plaintiff's accounts as charged off rather than any indication that the account was subject to a bankruptcy proceeding.
73. In November of 2022 Experian and TransUnion received Plaintiff's dispute regarding the BofA accounts.
74. Plaintiff's dispute indicated that the accounts should be listed as included in bankruptcy rather than charged-off.
75. On January 5, 2023, after the statutory time period had passed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose of ensuring Plaintiff's account with BofA had been properly updated.

76. The BofA account on Plaintiff's credit reports still contained inaccurate information regarding the account despite Plaintiff disputing the account.
77. BofA did not update the account to indicate that it was included (or discharged) in Plaintiff's bankruptcy.
78. TransUnion continued to report the account as if no bankruptcy was filed.

**Inaccuracy – BofA**

79. Plaintiff was frustrated to see that Defendant BofA did not properly update the accounts but instead continued to report Plaintiff's account as past-due and charged-off.
80. BofA did not update Plaintiff's account to indicate that it was included in bankruptcy.
81. Such reporting makes it appear that Plaintiff did not seek to discharge his BofA accounts and, as a result, is still responsible for the outstanding balance.
82. Such reporting remains entirely inaccurate.

   **Willfulness**

83. Instead of updating the account after Plaintiff filed for bankruptcy protection, BofA continued to report the account as past-due and charged-off.
84. BofA continued to report the past-due and charged-off notations with the intent of having Plaintiff make a payment on the account in order to remove the derogatory account information.
85. This was not a negligent act by BofA but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit.
86. BofA has refused to update the tradeline to reflect that the account was included and discharged in bankruptcy.

   **Damages**

87. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
88. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by the BofA reporting as that reporting has been disclosed and disseminated to various third-party lenders.
89. Until BofA's reporting has been properly updated Plaintiff continues to appear a severe credit risk.
90. The actions of TransUnion and BofA as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**TransUnion – Failure to Assure Credit Reporting Accuracy**

91. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
92. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.
93. Had TransUnion maintained reasonable procedures to assure maximum accuracy TransUnion would never have allowed Defendant BofA to report the account as described herein.
94. As a result of TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

95. The violations described herein by TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

96. TransUnion intentionally sends consumer disputes to employees who do not live within the continental United States.

97. This is done intentionally to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

98. These employees for Defendant TransUnion receive little to know training concerning how to accurately report consumer debt.

99. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D. Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

100. Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

101. TransUnion has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

102. TransUnion knew that Plaintiff filed for bankruptcy protection but continued to allow BofA to report the accounts as if no bankruptcy was filed.

103. TransUnion also allowed BofA to report inaccurate and incomplete account information despite knowing that the account was included and discharged in bankruptcy.

104. Consequently, Defendant TransUnion is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

105. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

**BofA – Failure to Reinvestigate.**

106. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

107. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

108. Defendant BofA violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

109. The CRAs provided notice to BofA that Plaintiff was disputing the inaccurate and misleading information, but BofA failed to conduct a reasonable investigation of the information.

110. Based on Plaintiff's dispute, BofA should have known it was reporting incomplete and inaccurate account information.

111. The most basic investigation would include a simple review of Plaintiff's account and bankruptcy filing.
112. Such an investigation would be unreasonable.

**TransUnion – Failure to Reinvestigate Disputed Information.**

113. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
114. After Plaintiff disputed the accounts mentioned above, TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
115. TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
116. Plaintiff alleges that TransUnion has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
117. TransUnion is not a passive entity bound to report whatever information a data furnisher, such as BofA, provides.
118. TransUnion can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from the DF.
119. TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards and reporting inaccurate and incomplete information.
120. TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that TransUnion's general policy is to simply parrot whatever information a data-furnishers sends.

121. Such policy and procedure inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**TransUnion – Failure to Review and Consider All Relevant Information.**

122. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

123. TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

124. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

125. The violations by TransUnion were willful, rendering TransUnion individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

126. In the alternative, TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

127. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**TransUnion – Failure to Delete Disputed and Inaccurate Information.**

128. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
129. TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.
130. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
131. The violations by TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.
132. In the alternative, TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.
133. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:
1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct

pursuant to 15 U.S.C. § 1681n;

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;

5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: March 1, 2023

**Gale, Angelo, Johnson, & Pruett, P.C.**
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff